UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBERT MUNSEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 3:11-CV-207 |
| ) | (VARLAN/GUYTON) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before Court on plaintiff's Motion for Judgment on the Pleadings [Docs. 13, 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17, 18]. Plaintiff Robert Munsey seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), and the final decision of defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On January 7, 2008, plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income ("SSI"), claiming a period of disability which began January 1, 2003 [Tr. 84]. After his application was denied initially and also denied upon reconsideration, plaintiff requested a hearing. On September 8, 2009, a hearing was held before an ALJ to review determination of plaintiff's claim [Tr. 328-340]. On September 30, 2009, the ALJ found that plaintiff was not disabled.

The Appeals Council denied plaintiff's request for review on May 6, 2011. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

I.  ALJ FINDINGS

> The ALJ made the following findings:
>
> 1. The claimant has not engaged in substantial gainful activity since October 5, 2007, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: hearing loss; mental depression; substance addiction disorder reported remission; mental anxiety and anti-social personality disorder (20 CFR 416.920 (c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: a lack of acute hearing; inability to handle frequent contact with the general public and inability to learn, understand and carry out more than simple job instructions.
>
> 5. The claimant is capable of performing past relevant work as a landscape laborer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

2

> 6. The claimant has not been under a disability, as defined in the Social Security Act, since October 5, 2007, the date the application was filed (20 CFR 416.920(f)).

[Tr. 15-24].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case

de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

6

## IV. EVIDENCE

Plaintiff presents evidence of hearing impairments and mental health impairments.

### A. Evidence Relating to Hearing Impairments

Plaintiff had difficulties as a child due to hearing problems [Tr. 163-66]. Plaintiff alleges that his hearing problems have worsened. Plaintiff is totally deaf in his left ear and mostly deaf in his right [Tr. 248-49]. When wearing a hearing aid in his right ear, plaintiff still has moderate hearing loss in that ear, hearing conversational tones at 45-55 dBHL and having only 48% speech discrimination [Tr. 248]. Plaintiff states that he does not have a hearing aid because it broke while he was in jail [Tr. 281].

The clinical audiologist who performed the hearing examination for the Disability Determination Services ("DDS") stated that plaintiff's hearing loss "is considered debilitating and affects his ability to communicate in both a social or work environment" [Tr. 249]. William L. Downey, M.D., a reviewing physician, stated that plaintiff would have difficulty understanding normal conversation with hearing aids and will have to be in situations in which there is little ambient noise in which normal hearing is not required for safety to himself and others [Tr. 193].

### B. Evidence Relating to Mental Health Impairments

Plaintiff has a history of behavior problems, social problems, and possible attention deficit disorder [Tr. 164]. He reports that he did not pass tenth grade [Tr. 320]. Plaintiff also reports that when he was fifteen years old he was convicted for the delivery and sale of a controlled substance, removed from his home, and sent to Mountain View

Youth Developmental Center and Natchez Trace Wilderness Program [*Id.*].  He has subsequently been incarcerated for theft several times and received psychological treatment while in jail [Tr. 178, 321].

On October 17, 2007, Kristin L. Dean, Ph.D., discussed a treatment plan with plaintiff [Tr. 252].  Dr. Dean listed diagnoses of: mood disorder, not otherwise specified; rule out bi-polar disorder; and morbidity/mortality, not otherwise specified [*Id.*]. Dr. Dean's listed a goal of enhancing plaintiff's capacity to manage his moods; she set a time frame of six months to reach this goal [*Id.*].

Although Plaintiff refused psychological services while in prison in 2004 [Tr. 321], he later requested help at discharge and was referred to Cherokee Health Services [Tr. 318].  At his intake at Cherokee in October of 2007, plaintiff's providers assessed him with a Global Assessment Functioning ("GAF") score of 40 and diagnosed him with anxiety disorder, not otherwise specified, and mood disorder, not otherwise specified [Tr. 252].  Plaintiff indicated to psychiatrist Jeffry Jacobs, M.D., that he gets depressed, cannot handle crowds, and experiences racing thoughts, anxiety, and paranoia [Tr. 256-58].  Plaintiff reportedly attempted suicide about the time of the death of his mother [Tr. 170, 256].  According to Dr. Jacobs, the overdose is a contributing cause of plaintiff's severe hearing loss [Tr. 256].

In January 2008, plaintiff reported that he continued to have anxiety attacks with severe agoraphobia [Tr. 259]. Dr. Jacobs diagnosed plaintiff with: panic disorder with agoraphobia; mood disorder, not otherwise specified; probable mental disorder secondary to hypoxic brain injury; and history of opiate dependence, in remission per patient [Tr. 259].

In February of 2008, the Mobile Crisis Unit admitted plaintiff to Peninsula Behavioral Health hospital because Plaintiff was suicidal [Tr. 184, 221]. Among other things, plaintiff reported that the was stressed by financial hardships and his disability claim having been denied [Tr. 184]. The Mobile Crisis Unit diagnosed plaintiff with: depressive disorder, not otherwise specified and possible antisocial disorder, aggravated by financial, legal, occupational, and housing issues. The Mobile Crisis Unit assessed plaintiff with a GAF of 40 [Tr. 188].

During continued care in February 2008, plaintiff presented himself as anxious and depressed [Tr. 221]. He reported he was paranoid that people talked about him and would have episodes of anxiety in which he would become hot and nauseated [*Id.*]. Plaintiff stated that he sometimes heard voices, and he was diagnosed with bipolar disorder, not otherwise specified, and opioid dependence, with a GAF of 39 [Tr. 220].

In July of 2008, Dr. Jacobs wrote a letter stating plaintiff had Panic Disorder with Agoraphobia; Mood Disorder, NOS; Opioid Dependence in reported remission; and Antisocial Personality Disorder [Tr. 214]. After serving several months for a shoplifting

9

charge, plaintiff returned to Cherokee in December with the same diagnoses and a GAF score of 40 [Tr. 177, 179].

On August 6, 2008, Dorothy Tucker, Ph.D., a state agency reviewing physician, opined that plaintiff could understand and remember simple and low-level detailed tasks [Tr. 213]. Dr. Tucker indicated that plaintiff could sustain concentration and persistence for such low-level detailed tasks, with some, but not substantial, difficulty [*Id.*]. Plaintiff could interact with peers and supervisors with some, but not substantial, difficulty, but he would do better working with things rather than people [*Id.*]. Finally, Dr. Tucker opined that plaintiff could adapt to infrequent change and set limited goals and would have some, but not substantial, difficulty in recognizing hazards [*Id.*].

Ms. Kathleen Erickson, a counselor and licensed social worker, performed a psychological evaluation of plaintiff on February 9, 2009, for Dr. Jacobs [Tr. 171-72]. Using a scale in which a "3" means moderate limitations and "2" means marked limitations, Ms. Erickson stated that plaintiff's ability to perform Activities of Daily Living ("ADLs") were moderately limited and that he was markedly limited in interpersonal functioning, concentration, persistence, pace, and his ability to adapt to change [Tr. 172]. She explained that plaintiff's mood symptoms interfere with consistent and thorough attention to ADLs and that he often needs help from his girlfriend [*Id.*]. Plaintiff's agoraphobia interferes with his ability to engage in social events or even go shopping, according to Ms. Erickson [*Id.*]. She stated that his paranoid ideations and irritability interfere with his ability to concentrate and follow through on tasks [*Id.*].

10

Lastly, Ms. Erickson explained, "Patient has a history of poor coping skills and regression when faced with normal adult stressors" [*Id.*]. She assessed plaintiff's current GAF as 45 [*Id.*].

Although plaintiff told Dr. Jacobs on August 11, 2009, that plaintiff's medications manage his mood and anxiety [Tr. 154], at an individual counseling session the next day, Ms. Erickson observed that plaintiff was still functioning poorly [Tr. 152-53]. Ms. Erickson observed plaintiff to be depressed and watched him drop the key he was holding at least five times during the discussion [Tr. 153]. She noted that, because of his hearing problem, he could not understand what she was saying whenever he looked away from her lips [*Id.*]. Ms. Erickson noted "[a]ttention is poor as is his ability to manage hyperactivity" [*Id.*]. She observed, "He is clearly unable to function and take care of his own affairs" [*Id.*]. "Not only does his extreme hearing loss negatively impact ability," she wrote, his mood disorder and generalized anxiety interfere with his ADLs and coping [*Id.*]. With regard to the instant claim, Ms. Erickson noted that it appeared that plaintiff's "purpose of visit is to ensure that records have been provided to [counsel]" [*Id.*].

## V. POSITIONS OF THE PARTIES

Plaintiff presents three allegations of error. First, he argues that the ALJ erred by ignoring the psychological assessment and notes from Kathleen Erickson [Doc. 14 at 14]. Second, plaintiff argues that the ALJ erred by failing to explain the weight afforded to the opinion of Dorothy Tucker, Ph.D. [Doc. 14 at 16]. Finally, plaintiff argues that the ALJ erred by not adopting the findings of William L. Downey, M.D. [Doc. 14 at 17].

11

The Commissioner responds that the ALJ did not err in addressing the findings and notes of Ms. Erickson, and the Commissioner argues that the findings and notes are entitled to little weight given their source and the context of the visits [Doc. 18 at 11]. The Commissioner maintains that the ALJ reasonably relied on the opinion of Dr. Tucker [Doc. 18 at 14]. The Commissioner contends that the ALJ properly addressed plaintiff's hearing impairment throughout his opinion and gave appropriate weight to the opinions relating to this condition, including those of Dr. Downey [Doc. 18 at 15-16].

Plaintiff replies that Commissioner has not cited any legal basis for excusing his failure to address the findings addressed above [Doc. 19 at 1]. Plaintiff focuses upon the ALJ's failure to credit Dr. Downey and Ms. Erickson's findings and notes, and concludes that the ALJ violated 20 C.F.R. § 416.927(f)(2)(ii) and Social Security Rulings 96-6p, 96-8p, and 06-3p by not explaining the weight given to these opinions [Doc. 19 at 4].

## VI. ANALYSIS

The Court finds that the ALJ did not err in evaluating the evidence before him. Rather, he considered the opinions of plaintiff's examining and non-examining sources and ultimately concluded that plaintiff was able to perform work. In summarizing his findings, the ALJ explained:

> Based on these observations and inconsistencies, the undersigned concludes that the claimant's testimony concerning his symptoms and limitations is not supported by the evidence of record and is deemed not fully credible. When incarcerated in 2004, he alleged no other problems other than a hearing deficit. With regard to his shoplifting charges, the claimant informed Dr. Jacobs that he shoplifts "because it is too hard to work to get money". Although he

12

> has difficulty with several co-workers, crowds or public places, he indicated to Dr. Jacobs that he tended to do well on jobs where he was the only person or if there was only one other co-worker. Although the claimant has a documented hearing loss and would have difficulty with spoken instructions, he has continued to obtain work as a landscape laborer when work has been available at a temporary employment service. When seen at Peninsula in 2008, his employer was listed as M&M Landscaping and he said he had been doing landscaping off and on for years. He reported his hearing loss inhibited his job opportunities and treatment notes indicated that he was to be set up with vocational rehabilitation. His hearing loss has been found to be severe but his hearing was improved when he was provided hearing aids while incarcerated. Review of mental health treatment notes finds that his symptoms remain manageable overall as long as his medication is taken as prescribed.

[Tr. 22]. The ALJ concluded that plaintiff retained the capacity to perform a full range of work at all exertional levels with specified nonexertional limitations including a lack of acute hearing and certain social and psychological limitations. The ALJ found that the claimant was capable of performing his past relevant work as a landscape laborer.

With the ALJ's findings in mind, the Court will address the portions of the ALJ's decision addressing each of plaintiff's alleged experts below.

### A. Kathleen Erickson, LCSW

Plaintiff maintains that the ALJ did "not acknowledge the opinions of Kathleen Erickson, LCSW" [Doc. 14 at 14].

The ALJ, however, discussed plaintiff's treatment at Cherokee Health Systems, including plaintiff's treatment with Ms. Erickson and Dr. Jacobs, at length [Tr. 21]. In part, the ALJ explained:

13

> Follow-up treatment notes in August 2009 indicate the claimant had been inconsistent in attendance to therapy and medication visits. He resumed medication after two no shows with Dr. Jacobs and adherence to his treatment plan was addressed. He reported his mood and anxiety and sleep were manageable overall as long as he took his medication as prescribed. He was assessed a current GAF of 45, highest in the past year of 45 and lowest in the past year of 45. The records noted the purpose of the visit appeared to be to insure that records had been provided to his disability attorney's office. It was noted that the claimant was under the impression that it was his job to gather and provide these records but it was unclear as to whether or not he had understood the instructions given to him by that office. However, records indicated it was clear that he was unable to function and take care of his own affairs. Treatment notes showed not only did his extreme hearing loss negatively impact his ability, his mood disorder and generalized anxiety interfere with his activities of daily living and with coping ability. It was noted that he could not hear her voice if he looked away from the writer's lips.

[Tr. 21].

The ALJ, thus, discussed the very portions of Ms. Erickson's notes to which plaintiff cites the Court. The ALJ considered these opinions, but he ultimately concluded that plaintiff could perform work because he had done so despite his hearing impairment and because he retained the ability to work with a limited number of co-workers [Tr. 22]. The Court finds that the ALJ complied with his obligations under Social Security Rulings 96-8p, 06-3p, and 96-3p, and more generally, the Court finds that the ALJ discussed the evidence before him in a manner that allows plaintiff, this Court, and any subsequent reviewers to follow his reasoning. *See Cruse v. Comm. of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

14

Accordingly, the Court finds that plaintiff's allegation that the ALJ erred in addressing plaintiff's mental health treatment at Cherokee Health Systems—specifically, his treatment with Kathleen Erickson, LCSW—is not well-taken.

**B.     Dorothy D. Tucker, Ph.D.**

Plaintiff next argues that the ALJ erred in addressing the findings of Dorothy D. Tucker, Ph.D. [Doc. 14 at 16]. Plaintiff cites the Court to 20 C.F.R. § 416.927, which states:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

§ 416.927(f)(2)(ii).[1]  Plaintiff argues that the ALJ did not fulfill this requirement by explaining why he afforded weight to Dr. Tucker's assessment of plaintiff's impairments [Tr. 14 17].

The ALJ discussed Dr. Tucker's findings at length noting, *inter alia*, that she found: "the claimant could understand and remember for simple and low-level detailed tasks; sustain concentration and persistence for the above tasks with some but not substantial difficulty; interact with peers, co-workers and supervisors with some but no substantial difficulty but would work better with things than people" [Tr. 22].

---

[1]At the time of the ALJ's decision and the briefing in this case, this subsection was 20 C.F.R. § 416.927(f)(2)(ii).  It was redesignated as subsection (e)(ii) by 77 Fed. Reg. 10657, on February 23, 2012.

15

In reviewing the ALJ's decision, the Court finds that the ALJ could have been more explicit in stating the reasons he afforded weight to Dr. Tucker's findings. The ALJ cites numerous reasons for affording weight to Dr. Tucker's findings, but he does not include language tying these reasons back to Dr. Tucker's findings in the way one might hope. For example, just below his discussion of Dr. Tucker's findings, the ALJ cites plaintiff's statement to Dr. Jacobs that he tended to be able to do jobs with only one other co-worker and plaintiff's ability to perform work as a landscape laborer [Tr. 22]. Both of these facts support crediting Dr. Tucker's conclusion that plaintiff's constraints were generally moderate. Moreover, the ALJ explained, "Review of mental health treatment notes finds that his symptoms remain manageable overall as long as hi medication is taken as prescribed" [Tr. 22].

The Court finds that the portion of the ALJ's opinion discussing Dr. Tucker and the ALJ's ultimate findings, read as a whole, sufficiently explain the weight afforded to Dr. Tucker's opinion. The ALJ's somewhat disorganized discussion of the weight and the factors does not constitute reversible error.

Accordingly, the Court finds that plaintiff's allegation that the ALJ erred in addressing the findings of Dr. Tucker is not well-taken.

C. **William L. Downey, M.D.**

Finally, plaintiff argues that the ALJ's residual functional capacity assessment ("RFC") conflicts with the opinion of William L. Downey, M.D., a medical source.

16

Plaintiff argues that the ALJ did not explain why Dr. Downey's opinion was not adopted, as is required by Social Security Ruling 96-8p [Doc. 14 at 17].

As noted above, Dr. Downey found that plaintiff would have difficulty understanding normal conversation even with hearing aids and could not be in situations in which normal hearing is required for his safety and the safety of others [Tr. 193]. He observed that plaintiff must use aided hearing "otherwise he will be able to hear [and] understand little except at high sound levels" [*Id.*]. The ALJ discussed Dr. Downey's findings by stating that Dr. Downey found no exertional limitations but "did find the claimant had a sensorieneural hearing loss and had difficulty with spoken instructions" [Tr. 21].

The ALJ adopted Dr. Downey's findings, at least in part, and incorporated the hearing impairment into the hypothetical he posed to the Vocational Expert at the hearing in this case. The ALJ instructed the Vocational Expert to assume a person with "hearing loss . . . resulting in a lack of acute hearing," and with the other impairments established in the record [Tr. 335]. The ALJ did not, however, state that plaintiff would have difficulty understanding normal conversation even with hearing aids and could not be in situations in which normal hearing is required for his safety and the safety of others. The Vocational Expert responded that, with such impairments, plaintiff could return to his landscaping work [Tr. 338].

17

Thus, even incorporating the hearing impairment, the ALJ found that plaintiff could work as a landscaping laborer as he had actually and generally performed it in the past [Tr. 22]. The ALJ found that plaintiff could perform this work, despite his hearing impairment, and the Court finds that this finding was supported by the testimony of the Vocational Expert and the report of Dr. Downey.

In the alternative, the ALJ found that other jobs exist in the national economy that could be performed by plaintiff [Tr. 22]. This finding was also supported by the testimony of the Vocational Expert [Tr. 336]. Even assuming the ALJ erred by not fully incorporating Dr. Downey's findings into his hypothetical or by not finding that the hearing impairment described by Dr. Downey would preclude work as a landscaper, the ALJ's alternative finding that plaintiff could perform work as a sorter, laundry folder, or housekeeper is supported by the testimony of the Vocational Expert and is consistent with the limitations found by Dr. Downey.

Based on the foregoing, the Court finds that the ALJ appropriately considered Dr. Downey's findings and concluded that plaintiff retained the ability to perform his past labor as a landscape laborer, as actually and generally been performed. Moreover, even if the ALJ erred by finding that plaintiff could continue his work as a landscape laborer given the limitations described by Dr. Downey, the ALJ found that plaintiff was capable of performing numerous other jobs available in the regional and national economies. There is no evidence or testimony in the record indicating that these positions would be precluded by the limitations found by Dr. Downey. Therefore, any error was harmless.

18

## VII. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine plaintiff is capable of performing his past relevant work as a landscape laborer or, in the alternative, performing other similar work available in the regional and national economies. Substantial evidence supports the ALJ's findings and conclusions. Therefore, plaintiff's Motion for Judgment on the Pleadings **[Doc. 13]** is **DENIED** and the Commissioner's Motion for Summary Judgment **[Doc. 17]** is **GRANTED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

ENTERED AS A JUDGMENT

    s/ Debra C. Poplin
    CLERK OF COURT